## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF NORTH CAROLINA
## CHARLOTTE DIVISION
## 3:22-cv-562-MOC

| | | |
|---|---|---|
| K. K. AND A. K., | ) | |
| | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | **ORDER** |
| | ) | |
| CDK GLOBAL, INC. AND NATIONAL | ) | |
| UNION FIRE INSURANCE COMPANY OF | ) | |
| PITTSBURGH, PA, INC., | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**THIS MATTER** comes before the Court on cross motions for summary judgment. (Doc. Nos. 36, 38). Because the parties dispute facts material to the resolution of this matter, both motions will be **DENIED**.

### I.      Background[1]

Samir Pradeep Kulkani was traveling on company business when he shot himself in the head with a co-worker's gun. Mr. Kulkarni later died of his injuries. Samir's niece and nephew now claim accidental death benefits under his employee benefits plan. The plan's coverage—and this case's resolution—turn on whether Samir's death was an accident.

Defendant CDK employed Mr. Kulkarni until his death in December 2019. Upon joining CDK, Mr. Kulkarni elected to receive an employee benefits plan governed by ERISA. He named Plaintiffs, his niece and nephew, as beneficiaries. The plan included an insurance contract providing for payment of accidental death benefits up to $2.5 million. Two aspects of that policy's language are relevant here. First, beneficiaries are entitled to payment only if the

---

[1] These facts are drawn from the administrative record at Doc. No. 31-1.

1

insured's injury was "sustained as a direct result of an accident." (Doc. No. 31-1 at 123). Second, beneficiaries are <u>not</u> entitled to recover for loss resulting from "intentionally self-inflicted [i]njury." (<u>Id</u>.). The first condition explains the positive scope of the policy's coverage. The second condition states a negative exclusion to the policy's scope.

Mr. Kulkarni's beneficiaries can only recover if his injury was within the scope of the policy. Specifically, A.K. and K.K. are only entitled to payment of accidental death benefits if their uncle's death was "a direct result of an accident" that was not "intentionally self-inflicted." Defendants CDK (the policyholder) and National Union (the insurer) argue that Samir's death was no accident, and in the alternative that it resulted from an intentional, self-inflicted injury. Plaintiffs disagree.

The circumstances of Mr. Kulkarni's death are the nub of this dispute. On a Monday in May 2020, CDK dispatched Samir and a co-worker (Marshall Tanner) to Rocky Mount, North Carolina. That Thursday evening, Kulkarni and Tanner celebrated Samir's belated birthday at a hotel bar. They drank heavily. Samir may have consumed meth. (Doc. No. 31-1 at 54). Between 11:00 p.m. and 12:00 a.m., the duo returned to Mr. Tanner's room at a hotel across the street. In the room was a small sitting area, with two chairs facing each other over a rectangular table. Mr. Tanner's loaded handgun was on the table. Tanner and Kulkarni sat across from one another and spoke for about five minutes. Then, without warning, Samir picked up Mr. Tanner's gun with his right hand, pressed the muzzle to the side of his head, and fired. Samir died three days later.

At 2:09 a.m., Tanner called 911. Eighteen police officers responded to the scene. They treated the hotel room as a crime scene and questioned hotel employees, patrons, and Tanner. Officers obtained search warrants for Kulkarni's and Tanner's cell phones and reviewed surveillance footage from the hotel. Tanner stated—and police confirmed—that Kulkarni's

girlfriend had recently stopped returning his calls.[2] The officers concluded that Mr. Kulkarni's death was a suicide.

After Samir died, Plaintiffs' representative submitted a claim for accidental death benefits under the employee benefit plan. National Union denied the claim. Plaintiffs appealed. Their claim was again denied. With their unsuccessful appeal, Plaintiffs exhausted their administrative remedies under the plan. They turned to this Court for relief.[3]

Plaintiffs and Defendants both move for summary judgment. This Court heard argument on both motions in early November 2023. At that hearing, the Court indicated that both motions would be denied. This Order explains why.

## II.    Legal Standard

Addressing the cross motions for summary judgment, the Court reviews de novo Defendant National Union's determination that Plaintiffs are not entitled to recover under the policy. Johnson v. Am. United Life Ins. Co., 716 F.3d 813, 819 (4th Cir. 2013). Absent extraordinary circumstances warranting consideration of extrinsic evidence, the Court's review is confined to the evidentiary record before the plan administrator. Quesinberry v. Life Ins. Co., 987 F.2d 1017, 1026–27 (4th Cir. 1993).

A party is entitled to summary judgment where they show (1) the absence of any genuine dispute of material fact and (2) that they are entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). If a fact can affect the outcome of the dispute under the applicable law, then that fact is material. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A fact is genuinely

---

[2] Tanner also told National Union that, earlier in the week, Samir told Mr. Tanner that he had lost money on the stock market. Tanner further stated that on the day of his death, Samir had learned that his attempt to purchase a house had fallen through. Samir's father, however, denies that Samir had any reason to harm himself.

[3] Plaintiffs assert a cause of action arising under federal law, arguing that Defendants' denial violates ERISA. 29 U.S.C. § 1001, et seq.

disputed if a reasonable jury could find in favor of either party. Id. The court construes all facts and inferences therefrom in the light most favorable to the non-movant. United States v. Diebold, Inc., 369 U.S. 654, 655 (1962). "'Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial.'" Ricci v. DeStefano, 129 S. Ct. 2658, 2677 (2009) (quoting Matsushita v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)).

The party requesting summary judgment bears the burden to show the absence of a genuine dispute of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). If the movant makes this threshold showing, the burden shifts: the non-movant must then adduce specific, material facts giving rise to a genuine dispute. Id. at 324; Anderson, 477 U.S. at 248. Naked allegations and conclusory denials are insufficient for a nonmovant to survive summary judgment. Id. at 252.

In the Fourth Circuit, ordinary summary judgment standards apply to ERISA disputes. Compare Tekmen v. Reliance Standard Life Ins. Co., 55 F.4th 951, 958 (4th Cir. 2022) with Wilkins v. Baptist Healthcare Sys., Inc., 150 F.3d 609, 618–19 (6th Cir. 1998) (Gilman, J., concurring); Orndorf v. Paul Revere Life Ins. Co., 404 F.3d 510, 517 (1st Cir. 2005); LaAsmar v. Phelps Dodge Corp. Life, Accidental Death & Dismemberment & Dependent Life Ins. Plan, 605 F.3d 789, 795–96 (10th Cir. 2010). The Circuit has declined to endorse ERISA-specific summary judgment standards, and even "questioned the propriety of employing summary judgment in the ERISA-benefit-denial context." Tekmen, 55 F.4th at 959 (citing Phelps v. C.T. Enters., 394 F.3d 213, 218 (4th Cir. 2005). This concern is exacerbated where—as here—the parties dispute material facts. Id. at 960. That is because at the summary judgment stage district courts are not equipped to resolve disputed questions of fact. Id. at 960 (citing Anderson, 477

4

U.S. at 248–49). Where the district court's de novo review of a denial of benefits under ERISA reveals factual disputes, the proper course is to deny summary judgment and proceed with a Rule 52 bench trial.[4]

### III. Analysis

Here, as in <u>Tekmen</u>, genuine disputes of material fact preclude the Court from granting summary judgment. Both parties' motions will be denied. Absent intervening settlement, a Rule 52 bench trial will follow.

Samir's niece and nephew are entitled to recover under his employee benefits policy if his death was (1) accidental and (2) not intentionally self-inflicted. The fact in dispute at the summary judgment stage—Mr. Kulkarni's mental state when he put Mr. Tanner's gun to his head—is probative of whether Mr. Kulkarni's death was accidental or intentional, and thus whether the beneficiaries are entitled to recovery under the policy. Mr. Kulkarni's mental state is a "material" fact because it will affect (truthfully, dictate) the outcome of the suit under governing law. <u>Anderson</u>, 477 U.S. at 248. If Samir intended to kill himself or knew injury was likely to result when he pulled the trigger, Defendants prevail. But if Samir did not think the gun was likely to go off (perhaps because he believed the weapon unloaded or its safety engaged), Plaintiffs have a claim.

Regarding the potentially accidental nature of Samir's death, the parties offer conflicting evidence. Concluding that (1) the employee benefit plan is governed by Seventh Circuit law and (2) it is impossible to ascertain Samir's subjective expectations when he pulled the trigger,

---

[4] "Summary judgment in such cases is appropriate when there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Where there are disputed issues of material fact, a Rule 52 bench trial, which will typically be limited to the administrative record that was before the plan administrator, is appropriate." <u>Tekmen</u>, 55 F.4th at 961 (citations omitted).

5

Defendants argue the Court should analyze objectively "whether a reasonable person with the background and characteristics similar to the insured" would have predicted that injury would occur as a result of their intentional conduct. Wickman v. Northwestern Nat'l Ins. Co., 908 F.2d 1088 (1st Cir. 1990) (adopted by the Seventh Circuit in Cozzie v. Metro. Life Ins. Co., 140 F.3d 1104, 1110 (7th Cir. 1998)). Defendant goes on to assert that

> [a] reasonable person with the background and characteristics similar to Mr. Kulkarni would have viewed his death as highly likely to occur as a result of bringing a loaded gun to his head and pulling the trigger.

(Doc. No. 39 at 16–17) (emphasis added). True enough, Samir had experience with firearms. (Id. at 10). True again, someone with Samir's background would understand death as a likely consequence of putting a loaded gun to their head and pulling the trigger. But Defendant ignores an important fact that Plaintiff disputes: there is simply no evidence Samir knew the gun was loaded when he pulled the trigger.[5] (Doc. No. 36 at 11). The dearth of proof on this point could explain Detective Woods' apparent conclusion that Samir's death resulted from an "accidental penetrating gunshot wound of the head." (Doc. No. 44 at 10). While not dispositive, Detective Woods' apparent conclusion that Samir's death resulted from an "accident" supports Plaintiffs' dispute as to the material fact of Samir's mental state.

The parties likewise present conflicting evidence regarding suicidal intent. Defendants argue that summary judgment must be granted because Samir's death "was undeniably intentionally self-inflicted." (Doc. No. 39 at 2). Not so. Even accepting that Samir pulled the trigger—self-inflicting a mortal wound—Plaintiffs can and do dispute that Mr. Kulkarni intended

---

[5] These facts are thus distinguishable from those in Stamp v. Metro. Life Ins. Co., 531 F.3d 84, 92–93 (1st Cir. 2008) (finding that the mortal risk from playing Russian roulette is obvious to a reasonable person). A person playing Russian roulette is definitionally aware that the gun is loaded. Here, Mr. Kulkarni's awareness is genuinely disputed.

to kill himself. Self-inflicted injuries can be unintentional: just ask anyone who's tried to catch a falling knife.

Defendants—based largely on Mr. Tanner's remarks memorialized in CDK's investigation report—suggest that financial or romantic stress potentially led Mr. Kulkarni to commit suicide. (Doc. No. 39 at 10). But Samir's father—who apparently maintained his son's bank accounts—contends that Samir was in good shape financially and did not have a steady girlfriend when he died. (Doc. No. 37 at 6). More generally, the elder Kulkarni maintains that Samir was not depressed and had no reason to kill himself. (Doc. No. 37 at 5); (Doc. No. 39 at 10–11). Resolving the conflicting evidence as to Samir's intent would require the court to make credibility determinations. Such decisions are inappropriate at the summary judgment stage. On the evidence presented to the Court thus far, a reasonable factfinder—the role this court will assume in a Rule 52 bench trial—could justifiably find either that Mr. Kulkarni did or did not intentionally self-inflict a mortal injury.

Finding the foregoing genuine disputes of material fact, the Court concludes that a Rule 52 bench trial is necessary to resolve this matter.

**IV.     Order**

Because the parties fail to resolve genuine issues of material fact, both motions for summary judgment are **DENIED**. Plaintiffs' request for attorneys' fees (Doc. No. 37 at 11) is **DENIED** without prejudice as premature. This matter will proceed to a bench trial under FED. R. CIV. P. 52.

**SO ORDERED**.

Max O. Cogburn Jr.
United States District Judge